The standard for proving deliberate indifference to a detainee's serious medical needs is relatively high. Mere negligence is not enough. The standard for pleading such a claim is low. All the plaintiff has to do is offer enough factual allegations to nudge her claim from conceivable to plausible. And that is exactly what the plaintiffs did in this case. What do you think is your strongest allegation that nudges it across the line? The persistent, documented, fatal decline. And we know that the defendants knew that Mr. Stevens had serious medical needs because they're the ones who documented it. And we know that the defendants knew that Mr. Stevens was declining because they monitored him. They didn't treat him, but they watched him closely, they wrote it all down, and that's all in the second amended complaint. The magistrate judge ignored all of those allegations. The magistrate judge found that it was a mere disagreement over treatment. How is that not correct? Well, first, the magistrate judge has an obligation to draw all reasonable inferences in Ms. Stevens' favor. And instead, he drew the reasonable inference that this could just be mere medical malpractice.  But second, monitoring is not care. There was no disagreement here over the type of care that Mr. Stevens was going to get. The disagreement was over whether he was going to get any care at all. Monitoring his vitals, taking his blood pressure, that's not care. Well, they did give him some care. They gave him whatever that medicine is that starts with an L. Yes. Librium and mesenopril? Yes. But what's interesting about that fact, Your Honor, is that Librium, according to Dr. Trapello, who is a board-certified emergency room doctor, his report is attached to the second amended complaint. He said that Librium is not the right drug for somebody in Mr. Stevens' condition. He was 375 pounds. He had a history of drug use. He had asthma, diabetes, hypertension, heart disease, that Librium was not the right drug. But the defendants decided that he was going to go on two withdrawal protocols, one for benzodiazepine withdrawal and one for alcohol withdrawal. And one of those withdrawals called for Librium. And after three doses of Librium, Mr. Stevens' blood pressure spiked to 190 over 112. 190 over 112. So that sounds like a very plausible argument that this was a serious failure to administer the correct care. Let's posit that for the sake of argument. It does start to sound like a disagreement with the care, though. It starts to sound less like they totally ignored it and more they made a mistake. They made a serious mistake. They committed medical malpractice. Maybe they committed serious medical malpractice. But how is that not a disagreement over the care rather than an allegation of deliberate indifference? First of all, continuing with medication that is hurting the patient, not helping but hurting. That's not care. That's the first thing. But the second thing is that Dr. Trapello said in his report that once Mr. Stevens had reached that critical point, it was after only one day of detention. After he reached the critical point where he's vomiting, he's sweating, he's disoriented, his blood pressure is through the roof, at that very moment, 10 out of 10 patients would have been sent to the emergency room. And if a patient walked in that looked like him, he would have been given top priority. Nothing happened after that. They just kept monitoring him. So then I guess, I mean, to make, well, it's not you're giving away cases that aren't yours. I'm just trying to figure out what do you think in this situation would be a disagreement about care rather than deliberate indifference? Because it can't, I guess I will say it's under the Eighth Amendment, it can't be under the Fourteenth Amendment. It simply can't be, because we've said it and the Supreme Court has said it, medical malpractice is not deliberate indifference. So what in this situation would be an example that you think would have been a disagreement about the standard of care rather than deliberate indifference? And again, you're not giving away anyone's case, because I'm asking you to give a person who's not your client. Sure. Hypothetically, in the beginning, putting Mr. Stevens on withdrawal protocols and giving him Librium, that might just be a matter of disagreement over care. It could be that he has some other hypertension issue, some other heart issue that they're not aware of. That might be disagreement over care. And if this case had just been one day, if Mr. Stevens had shown up on Thanksgiving night and had one day of detention and was released the next day, that might be mere medical malpractice. But this persisted for four days. And by the end, he walked in on his own two feet, and by the end he had to be rolled out in a wheelchair. And so what makes deliberate indifference different from medical malpractice is that it has to be grossly inadequate. It has to shock the conscience. And this court has said that if there are allegations from which the court can reasonably infer that the defendants knew the serious risk of harm, knew their actions were inadequate, and continued anyway, from the mere fact that it was obvious, it's obvious that Mr. Stevens is deteriorating and declining. And if in the face of that, for several days, the defendants continue with their own original diagnosis, their own original course of care, that's the difference between deliberate indifference and medical malpractice. And this court has held that very thing. In fact, in Perry v. Mead, which is a 2018 case, it's not binding precedent, but it's from this circuit, the court held that the defendant had plausibly stated the subjective element of deliberate indifference, where that inmate had rectal bleeding, pain, dizziness. He deteriorated to the point where he needed hospitalization, but the prison doctor and prison administrator, they were married to their original diagnosis and just continued with that and continued giving advice. Also, it's important to note, we're not there yet. Mr. Stevens has not had the benefit of discovery. It could very well be that the facts show this is just mere medical malpractice, but so long as she has enough allegations to make it plausible that she's entitled to relief under the standard of deliberate indifference, which she has done so here, she is allowed to assert that claim and proceed. Ms. Piccolari, help me with the facts that you've alleged in your complaint that go beyond the things that you've just described. In other words, you've walked us through why you think the things that they repeatedly did that didn't work fit the deliberate indifference bucket versus the failure to meet a standard of care. So I think I understand that. What else do you have in your complaint beyond that that helps me to get there to get the inference that you're talking about? There are two facts that are key. Mr. Stevens arrived at the detention center on Thanksgiving night, and he thought that he would be released the next day, but he didn't know that Friday was a court holiday. And that Friday was when he deteriorated substantially. And one of the allegations in the complaint is that one of the defendants, either Stephanie Schroer or Leslie Logsdon, called a judge to try to get him to be seen so that he could be released. And after he died, Ms. Stevens went back to the detention center to pick up his oxygen tank and his socks and his needles and his pills. And when she showed up, they wouldn't look at her. And one person said they knew that he was going to die in this facility, and they just wanted him out. Are those allegations that you've just raised within the magistrate judge's order finding that there was no inference or plausibility in this case? No, Your Honor. The magistrate judge fundamentally ignored the facts and made a decision on the merits. In fact, the judge's quotes are really rather remarkable, in my opinion. One of the quotes says, the plaintiffs fail to detail any, any intent or knowledge by the individual defendants to delay the decedent's treatment. First of all, that's just not true. But second of all, I've raised those other issues that I just discussed. And third, plaintiffs don't have to detail anything at the pleading stage. All the plaintiffs have. In fact, no, this court has said in Owens v. Baltimore City State's Attorney's Office, this court said that the recitation of facts need not be particularly detailed and the chances of success need not be particularly high. But Judge Colson ignored the facts, didn't accept them as true, didn't draw any reasonable inferences in her favor. And instead, he concluded, this is his exact quote, the individual defendants did everything possible to provide the decedent with quick and available medical attention. So do you think it's fair to say that this, I mean, I say we'll give you my reaction to when I read this opinion and ask you if you agree with it. This reads more like a summary judgment opinion than a 12B6 opinion to me. Would you agree with that? I agree with that 100%. There were statements that the judge made that worried me. It worried me how much Ms. Stevens never got a chance. All the reasonable inferences, all of them were drawn in favor of the defendants. The defendants documented Mr. Stevens vomiting. They documented his blood pressure. They documented his sweating. At one point, one of the defendants, the day before he was released, found Mr. Stevens in his bunk, soaked in his own urine. They didn't call a doctor. They didn't take him to a hospital. They didn't get him a chest X-ray. In fact, never once was he even seen physically by a doctor. They cleaned him up. They got him ready for his bail hearing, which he couldn't even go to for another 24 hours. And they got him out the door. Judge Colson did not give any of those facts any credit at all. It's not that the judge considered the merits of the facts and said they don't nudge the complaint to plausible. What the judge did was conclude, no, this is medical malpractice. They did everything possible. They were harmonious. They worked together. And that's just simply not what Twombly and Iqbal say that the court is supposed to do. If this complaint, which is 44 pages and has 33 pages of documented allegations of what the defendants actually themselves watched and wrote down, if that is not enough to draw the reasonable inference that Ms. Stevens has plausibly stated a claim for deliberate indifference, then what is? I'm going to reserve the rest of my time. Thank you. Mr. Griffith. Good morning, Your Honors. May it please the Court. I am Dan Griffith from Wakeford, Taylor & Preston, on behalf of, who I will call for brevity purposes, the medical defendants. And as the Court alluded in response to my colleague's colloquy, I think it's important that the Court remain tethered to the legal standard, which is not whether or not they have adequately pled a breach of the standard of care. The standard is, as we all know from the Farmer case, is whether the defendants are alleged to have acted with the very purpose of causing harm or with knowledge that harm will result. So that's the pleading standard. They have to plead almost a criminal standard. And how are these, is this very lengthy complaint, how does it not plead that? That they knew that they would be causing harm by withholding care? As Your Honor mentioned, it's a very, very factually detailed complaint. The complaint goes almost… Well, the magistrate judge didn't think so, apparently. Well, I think the magistrate judge saw how much detail was involved, saw how much attention was paid to Mr. Stevens, how much… No, I think the detail is how much inattention was paid to Mr. Stevens. Well, the plaintiff's argument before the magistrate judge was that the attention that was paid to Mr. Stevens was not treatment. Certainly, I don't think anybody can argue, even the plaintiff, the appellate does not argue that attention was not paid to Mr. Stevens. Mr. Stevens, as was documented in the complaint, was mentioned in the briefing and mentioned in the opinion below, Mr. Stevens, over his three full days, over three full days, was seen by seven separate medical professionals at least 15 times. Yeah, but just looking at him isn't enough. You have to do something when you see the decline that is taking place. Absolutely, Your Honor. And I think what the complaint says, although the argument on behalf of the other side is the complaint describes only evaluation or monitoring and not treatment, I think that is belied by the language in the complaint. And if Your Honor will, I will describe what the actual treatment was as opposed to monitoring and evaluation. Mr. Stevens was seen… Before you go down that litany, when you finish, I want you to help me understand, based on what you're about to tell me, when was that information communicated to the Stevens in this case? Because you're about to go tell me about a bunch of things that happened, but one of their allegations is, but you never told me. You told me he was stable. So go down your litany, but then at the end, tell me how that was communicated to the other side. Thank you, Your Honor. I will do that. Mr. Stevens was seen for a medical intake within 14 minutes of his arrival at the Allegheny Detention Center. In connection with that medical intake, with that medical screening, three separate orders were given. He was put on alcohol withdrawal. He was put on opiate withdrawal. He was put on a diet because of his obesity. Those were orders that were given. The protocol for what we call CEWA, or alcohol withdrawal, and COWS for opiate withdrawal, that protocol is treatment. He was on a protocol the entire time he was there. What that protocol involves is taking his vital signs, and there are scores… Was a physician consulted at that point? A physician did not evaluate him personally. So no. It was on call. On call, but no. The doctor prescribed the medication that he was already on. He was on, I think, 10 medications coming in. They got his prior medical chart, provided him with the medications he was already on, and five additional medications were ordered for him and administered to him. So he was on… What happened when his respiration rate increased to 24, and the protocol requires that anything above 20, a physician should be consulted? What happened then? I believe the assessor determined, I think he was given Gatorade at that time. Okay, so a physician wasn't called then. He was not called at that time. So no, Gatorade. Gatorade was administered, and he stabilized. He was there Friday, Saturday, and Sunday. Friday was a bad day for Mr. Siwa. There's no question. He was withdrawing. His Siwa scores, his cow scores were going up, and the medical personnel were evaluating that and treating that. He had medication, and his scores were being evaluated. Saturday was actually a good day for him. He had stabilized. His vital signs were stable, and on Sunday, he was starting to get a little bit worse, but he was being treated the entire time. He was being treated with medication. He was being evaluated. His withdrawal symptoms were being assessed. Was he stable at the time he was released? Yes. He had to leave in a wheelchair. People leave in wheelchairs all the time. His condition was stable, but he still had a 375-pound man with congestive heart failure. What examination was conducted at the time of release to determine he was stable? I think it's a relative. Like the medical intake, it's a physical assessment. But the complaint doesn't say that that occurred. Isn't that the standard? We started, and Judge Hyten said, boy, this feels an awful lot like summary judgment. You're articulating a bunch of facts about your perception of things, but where does it say that in the complaint? The complaint is being laid out by the Stephens, and they say, what you just said isn't true. Isn't that what the magistrate judge was supposed to be evaluating at 12B6, is whether or not that complaint articulates a plausible claim with all inferences being drawn to the non-moving party? All of that is true, Your Honor, with the correct legal standard, which is the magistrate judge had to evaluate the complaint to determine whether or not this complaint alleged that these individual medical providers had a subjective awareness that they knew, personally knew, that what they were doing was presenting a risk of harm to Mr. Stephens, and they did it anyhow. Don't they allege that he wasn't stable, although they were told he was? They allege he wasn't stable, and that you misrepresented the fact that he was stable, and that you did not do an assessment when he left. That's what they allege. You just said, well, we did do an assessment. It's a very low-level one, but we did. But that's not what the complaint says. There was no communication between Mrs. Stephens, the plaintiff, and the medical personnel for the three days he was incarcerated. And that's because the complaint says it? The complaint says that upon his discharge, the medical personnel at Allegheny County Detention Center did not tell Mrs. Stephens, hey, your husband's in really, really bad shape right now. What they told her was that he was stable. That's the allegation of the complaint, and according to them, that was a misrepresentation. And they allege that they did not do an assessment when he left. Correct. You just said, but we did. This sounds like summary judgment. There was enough of an assessment to determine he was stable. But where does the complaint say that? They're the ones who drafted the complaint. Do they say that? They do not say that there was a full assessment done, no. But you can't say somebody's stable without doing that. But isn't that their argument? They're saying we think you're deliberately indifferent because you told me he was stable, but you did not do an assessment. I think the allegations in the complaint, as noted by the magistrate judge, were not that. And if I may, I'll point to the specific allegations in the complaint that undercut the idea that the complaint alleges that these individuals subjectively knew what they were doing was wrong. It's in the very first paragraph of the complaint, which is JA-269. The allegation is none, meaning none of the medical professionals, thought it necessary to take Mr. Stevens to the hospital. Now, the standard is you have to allege that these individuals knew he should have been taken to the hospital and didn't do it. And that's the allegation that was pointed out by the magistrate judge. None of them thought it necessary to take him to the hospital. And in order to plausibly plead a subjective indifference, a deliberate indifference in the subjective element on behalf of the defense, you have to allege they knew he should have been taken to the hospital and they didn't do it. This complaint alleges just the opposite. They didn't believe it was necessary to take him to the hospital. What did you just read from? That's paragraph one of the Second Amendment complaint. It's JA-269. And it says none thought it necessary to take Mr. Stevens to the hospital. I'll also refer to paragraph 38 of the Second Amendment complaint, JA-278, paragraph 40, I'm sorry. And the complaint alleges it would have been difficult to distinguish the very early symptoms of a heart attack, stroke, diabetic shock, or sepsis from those of Mr. Stevens' other chronic conditions. So the Second Amendment complaint acknowledges that it would have been difficult for these folks to recognize the difference between a heart attack and what he already had. That's what the complaint alleges. That's a far cry from what the standard requires of subjective knowledge that what we're doing is causing him harm. What about all of these other detailed allegations in the complaint? None of them say the defendants knew what they were doing was wrong and they did it anyhow. And that's the fleeting standard. I'll also refer to— Can I ask you about something that I found a little troubling about the decision from the court we're reviewing, which is the treatment of the none thought it necessary allegation? Yes, I understand that literally read that could say they didn't think they needed to do it so they don't have subjective intent. Isn't a plausible and, in fact, the most plausible interpretation of that allegation, given how American English in the year 2023 works, is that that's being a bit sarcastic? That none thought it necessary is like none thought it was warranted. That is just not what none thought it necessary means in standard American English in 2023, right? I took it as an allegation of medical malpractice. You know, I know, but I read the magistrate judges to say that, oh, they're admitting that they didn't think it was warranted or needed. It was like, that is not how those words are construed in standard American English in 2023. When I say you didn't think it necessary, what I'm clearly saying is you—I think you know what I mean about what none thought it necessary means in standard idiom. I do, and I see your point. It might have been a semantic issue, but I— Well, no, no. I understood it to be interpreted by the court as a big, big, big red flag concession he had made that I just don't think is a fair— and certainly I don't think it's the only fair reading of the complaint, that that's a big concession on his part. I appreciate that, Your Honor, but if you look at that language against the standard, which requires that they know, I think the court is bound by the language in the complaint. Yeah, so what about paragraph 162 of the complaint at JA 301 that says one of the nurses charged with Mr. Stevens' care and at least one correctional officer made comments indicating that they knew he was fatally ill and wanted him released from the detention center as soon as possible so he would not die inside the facility. Now, I understand you disagree with that, but going back to Judge Dawson's point, this is the complaint and these are the allegations, and how does that not plausibly allege that they knew what they were doing was deficient? Who's they in that circumstance, Your Honor, because in that third-party comment, we have seven individual medical providers named as defendants. Well, one of the nurses. That allegation can sustain a deliberate indifference claim against all seven of them when none of them are named? They are named. They're not named in this paragraph, but they are named, you know, when they give him Gatorade when he's dying on the floor and other things. And I'm not sure how that paragraph can sustain a deliberate indifference against seven medical professionals. Not that paragraph alone, but it's one of 162 factual allegations. This is a very long and detailed complaint. Almost all of which say they should have done something differently. The main thrust of the complaint is he should have been taken to the hospital and they should have recognized signs that this could have been a heart attack. And if I can refer the Court to a representative paragraph. Well, you said one paragraph doesn't matter, so why are you telling me about one paragraph? This is a third representative paragraph. These are representative paragraphs. These aren't dispositive. But on paragraph 93, given his medical profile, a reasonably prudent physician in diagnosing Mr. Stevens' condition would be unable to rule out the possibility that Mr. Stevens was in the early stages of heart failure. A reasonably prudent physician being unable to rule out a possibility is miles from deliberate indifference. It's miles from the subjective, I know I'm hurting this guy, but I'm doing it anyhow. And I think that's what the district judge recognized, that there's a lot of challenges here to the treatment that he received. But number one, there's a lot of detail in the record. How would you distinguish this case from Perry v. Mead? I think in Perry v. Mead, there was an obvious medical condition that needed treatment and there was nothing done about it. And it was so obvious that the court was able to conclude that just based on the physical condition of this individual, as alleged, something should have been done. And in Perry v. Mead, something was done, but they realized that it wasn't working and kept doing it anyhow. This wasn't one of those situations. This was the SEWA protocol was working, the CALS protocol was working, and the medications were being changed. He was only there for a short period of time, but he was being actively treated for that entire time. And if there's a disagreement with the manner in which he was being treated, that's not deliberate indifference. That's medical malpractice, and that's what the court found. The court recognized this complaint states a valid claim for medical malpractice. It alleges a deviation from the standard of care. But once you say he should have been taken to a hospital or he should have been diagnosed as having a heart attack, that's not in here. There's no allegations in this complaint that say these medical professionals knew. Not that they should have known, but they knew that this type of treatment was not working. And that's the difference. I don't have anything further. Do you have any other questions? All right then, thank you. Thank you very much. Ms. McLarney, you have some time. Thank you. I want to address something that opposing counsel said about whether Mr. Stevens was stable upon intake. Opposing counsel said that Mr. Stevens, there was no communication between the providers at the detention center and Mr. Stevens' family during his detention, and that's not true. Mrs. Stevens or Mr. Stevens' daughter, it's not clear, called the detention center and discussed the fact that someone had to come pick up his oxygen tank. Is that allegation in the complaint? It is in the complaint. You said it is. It is in the complaint, yes. And nobody said anything to her about the fact that he was extremely ill. In fact, he was sweating, vomiting excessively. His blood pressure was through the roof. He had tachypnea, which is a respiratory condition. They said nothing to her, and that is consistent with what I think Judge Dawson was asking me about earlier, which was what other allegations in the complaint support the deliberate indifference element, and that is those misrepresentations. Well, Mr. Griffiths says there are no allegations in the complaint that these medical professionals knew that what they were doing wasn't working, and that's probably true. That is accurate. There's nothing that specifically says that. What's your response to that? Well, there is something that specifically says that. There is an allegation in the complaint that says that the defendants knew that their conduct was not adequate, but because the pleading standard requires more than just conclusory allegations, that allegation was supported with all of the other allegations from which the court can and thus must draw the reasonable inference that the defendants knew their conduct was inadequate by the mere fact that it was obvious. Counsel also mentioned that the standard is that we have to state plausibly that the defendants were acting with the very purpose of denying harm. That's not the standard. Farmer B. Brennan sets forth the standard very clearly, and it says the subjective component can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Whether a prison official has the requisite knowledge of a substantial risk is a question of fact, subject to demonstration in the usual ways, including inference from circumstantial evidence. Also, Mr. Stevens, another example of the misrepresentations, which is an allegation that supports the knowledge element, is the fact that when Mr. Stevens left the detention center, and Jody Brashear writes, stable upon release, underline, there's no vitals taken. This man's vitals had been documented in grave detail for four days. He shows up at his bail review hearing or his bond hearing, and he's listless. His signature is sloppy, and they just make this bald assertion that he's stable, and that's because he wasn't. As Judge Thacker said, he had to be rolled out on a wheelchair. And the case law is clear that when there are misrepresentations like that, that the court can draw the reasonable inference that the defendants knew, actually knew, that what they were doing was not adequate. The opposing counsel mentioned that Mr. Stevens was seen, that he was put on withdrawal protocol, which is a form of treatment. Withdrawal protocol is a form of monitoring. And why do we monitor someone who's going through withdrawal? Because if it gets to a life-threatening state, which anyone in withdrawal can reach a life-threatening state, especially someone like Mr. Stevens, is so actions will be taken. Treatment will be provided. A doctor will assess the person. They will get hooked up to an EKG. They'll get an electrocardiogram. They'll get a chest X-ray, something, especially a patient like Mr. Stevens, who, according to Dr. Trapello, would have, any withdrawal symptoms, would have exasperated his heart condition. That's the whole point of monitoring, is so that if and when he reaches the stage that he reached, which is where he had tachypnea, where he had blood pressure that was through the roof, and he's vomiting and he's sweating and he's disoriented, I see that my time is up. Thank you. All right. Thank you. Thank you both. We'll come down and greet counsel, and then we'll take a short recess.
judges: Stephanie D. Thacker, Toby J. Heytens, Joseph Dawson III